IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

---

| | |
|---|---|
| RURAL TELEPHONE FINANCE COOPERATIVE, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| THE VIRGIN ISLANDS TELEPHONE CORPORATION, | ) ) ) ) |
| Defendant. | ) |

1:05cv320 (JCC)

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant's motion to dismiss or transfer.  Plaintiff Rural Telephone Finance Cooperative filed this breach of contract suit against Defendant The Virgin Islands Telephone Corporation.  For the reasons stated below, the Court will deny Defendant's motion to dismiss and deny Defendant's motion to transfer.

### I. Background

Plaintiff Rural Telephone Finance Cooperative, ("RTFC,") is a corporation that provides loans to its members, rural telecommunication companies.  Defendant The Virgin Islands Telephone Corporation, ("Vitelco,") is a rural telephone carrier

in the United States Virgin Islands and has been a member of RTFC since 1987.[1]

During the last eighteen years, Vitelco has borrowed over $65 million in multiple loans from RTFC.  These loans were negotiated and administered in Virginia; Vitelco's officers and directors frequently met with RTFC in Virginia; payments on the loans were sent to Virginia; some of the loans provided that they were governed by Virginia law; and in some loan agreements, Vitelco agreed to submit to the jurisdiction of Virginia courts.

On March 20, 2000, RTFC and Vitelco signed a Revolving Line of Credit Application and Agreement pursuant to which RTFC granted Vitelco a revolving line of credit up to $5 million. (Compl., Ex. A at 1).  The loan was administered in Virginia and payments on the loan were sent to RTFC in Virginia.

Under the Agreement, Vitelco could borrow, repay, and reborrow up to the $5 million limit until the "Maturity Date" which was March 20, 2005.  (*Id.*)  Also under the Agreement, Vitelco promised to pay "as and when due, interest on all amounts advanced hereunder from the date of each Advance and to repay all amounts advanced hereunder with interest on the Maturity Date." (*Id.*)  Under the Agreement, Vitelco "waive[d] the defense of

---

[1]  RTFC is a District of Columbia corporation with its principle place of business in Herndon, Virginia.  Vitelco is a United States Virgin Islands corporation with its principle place of business in Charlotte Amalie, St. Thomas, United States Virgin Islands.  Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(2005).

usury and all rights to setoff, counterclaim, deduction or
recoupment." (*Id.* at 3).  The Agreement provided that it "shall
be governed by and be construed in accordance with the laws of
the Commonwealth of Virginia." (*Id.* at 5).  Finally,

> [i]f any amount outstanding and due hereunder shall not
> be paid when due, [Vitelco] agrees to pay on demand
> RTFC's reasonable costs of collection or enforcement of
> this Agreement, or preparation therefor, including
> reasonable fees of counsel.  If payment of any
> principal and/or interest due under the terms of this
> Agreement is not received at RTFC's office in Herndon,
> Virginia, or such other location designated by RTFC
> within five (5) business days after the due date
> thereof . . ., Applicant will pay to RTFC, on demand,
> in addition to all other amounts due under the terms of
> this Agreement, any late-payment charge as may then be
> in effect pursuant to RTFC's policy on the delinquent
> amount for the late payment period.

(*Id.* at 3).

As of March 21, 2005, Vitelco failed to repay the
outstanding amounts owed under the agreement, which is $4 million
plus interest.  On March 22, 2005, RTFC provided Vitelco with
written notice of default.  On March 23, 2005, RTFC filed the
instant suit for breach of contract against Vitelco seeking $4
million plus interest, costs, reasonable attorneys' fees of
collection, and late payment charges.  On April 22, 2005, Vitelco
filed a motion to dismiss or transfer.  This motion is currently
before the Court.

Vitelco's defense to this action is that prior to the
Maturity Date, it asked RTFC to cancel the line of credit and
offset the balance owed against Vitelco's nearly $3.7 million

pro-rata capital share in RTFC, and accept payment in cash for any remaining deficiency.  Vitelco alleges that instead of following its request, RTFC acted in bad faith and filed this action.

RTFC previously filed two suits in this district to collect on a different loan agreement and guarantee against the borrower, Innovative Communication Corporation, ("ICC,") a Virgin Islands company, and the guarantor, Jeffrey Prosser, ICC's Chief Executive Officer and Chairman.  Vitelco is an ICC subsidiary. In the action against ICC, ("the ICC action,") RTFC alleged two principal loan defaults: (1) Vitelco's issuance of $81 million in preferred stock; and (2) Vitelco's use of $30 million to finance ICC's acquisition of the Belize Telecommunications Ltd.  (Def.'s Reply, Ex. A ¶¶ 9-11, 14-64).  As a remedy in the ICC action, RTFC seeks to accelerate the loan balance and foreclose on the collateral of the loan which includes 100% of the common stock of Vitelco.  RTFC expects as a result of the ICC action to end up "owning the stock of Vitelco."  (*Id.*, Ex. B at 25).  In the action against Prosser, ("the Prosser action,") RTFC seeks to recover on Prosser's guarantee of the loan that is the subject of the ICC action.  On October 19, 2004, Judge Hilton transferred the suits to the United States District Court for the District of the Virgin Islands.

-4-

RTFC claims that ICC's defenses to the suit are not and cannot be asserted by Vitelco in the instant suit.  ICC asserts as a defense that RTFC engaged in bad faith conduct when it appeared before the Virgin Islands Public Services Commission, ("the Commission,") to discuss ICC's alleged defaults.  RTFC claims that none of the acts of alleged bad faith asserted by ICC could support a defense of bad faith by Vitelco in the instant case.

RTFC claims that the suit against Prosser is a stockholder derivative action, not a loan default action, brought by RTFC as a pledgee of stock against the individual board members of ICC and Vitelco.  However, the Prosser action arises from the same alleged defaults on the ICC loan which give rise to the ICC action and involve Vitelco.

RTFC also filed a derivative suit in the Virgin Islands against Vitelco, Prosser, and the other officers and directors of ICC and Vitelco, ("the Virgin Islands suit,") based on the same loans and alleged defaults from the ICC and Prosser actions.  The Virgin Islands suit alleges that ICC and Vitelco officers and directors violated their fiduciary duties to shareholders by authorizing: (1) the issuance of $81 million in preferred stock by Vitelco; and (2) ICC's acquisition of Belize Telecommunications, Limited.  (Def.'s Reply, Ex. D).  These two

corporate actions are the principal bases for RTFC's allegations of default in the suits against ICC and Prosser.

Although the Virgin Islands suit is partially derivative and brought on behalf of Vitelco, RTFC has named ICC and Vitelco as defendants in the suit and sues not only as a shareholder, but also as a creditor of ICC.  Vitelco has filed a counterclaim in the Virgin Islands suit alleging that RTFC has engaged in a pattern of abusive litigation, "bad faith" lender liability, and breach of contract.  Vitelco argues that the instant case should be transferred for consolidation with the other three cases.[2]

## II. Standard of Review

### A. Personal jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks the requisite personal jurisdiction.  To establish jurisdiction over a non-resident, this Court must first consider whether jurisdiction is authorized by Virginia law.  Then, having found statutory authorization, the Court must consider whether the exercise of personal jurisdiction is consistent with traditional notions of fair play and due process.  *See Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993); *Blue Ridge*

---

[2] As of May 20, 2005, the date of oral argument on the motions, the ICC and Prosser actions had not been consolidated with the Virgin Islands suit.

*Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir. 1985). Virginia's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process.  *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990).  As always, the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

**B. Transfer of venue**

Section 1404(a) addresses motions to transfer.  With respect to transfer, the relevant portion of the statute instructs that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

This rather ambiguous standard has been interpreted to require consideration of the following four factors: (1) the plaintiffs' choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice. *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256-62 (E.D. Va. 1988) (Ellis, J.). The interest of justice factors include such circumstances as the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, [and] the possibility of harassment. *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999)(Spencer, J.)(citations and quotations omitted). In applying these factors, a court must remember that the plaintiff's choice of forum is entitled to substantial weight, and should be abandoned only if the defendant can show that it is clearly outweighed by other factors. *Id.*

### III. Analysis

**A. Personal jurisdiction**

Defendant Vitelco seeks dismissal of the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). When evaluating the propriety of jurisdiction obtained pursuant to a long-arm statute, a two-step analysis is required. *English &*

-8-

*Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990)(citing *Peanut Corp. of Am. v. Hollywood Brands, Inc.,* 696 F.2d 311, 313 (4th Cir. 1982)).  First, the Court must determine whether the statutory language applies to the defendant; second, if the statutory language applies, the Court must determine whether the statutory assertion of jurisdiction is consistent with the due process clause of the Constitution.  The parties agree that there is personal jurisdiction over Vitelco under two provisions of the Virginia long-arm statute.[3]  Thus, the Court need only determine whether the exercise of jurisdiction is consistent with due process.

This requires the Court to determine if Vitelco had enough "minimum contacts" with Virginia so that requiring it to defend its interests in Virginia does not "offend traditional notions of fair play and substantial justice."  *Metzger*, 901 F.2d at 39 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).[4]  The due process requirement is satisfied if the

---

[3] The Virginia long-arm statute provides that:

> A. A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from a person's:
>     1. Transacting any business in this Commonwealth; . . . [or]
>     2. Contracting to supply services or things in this Commonwealth.
> Va. Code Ann. § 8.01-328.1(A)(1)-(2)(2005).

[4] Factors to consider in doing the "fair play" analysis are the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in

defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injures that "arise out of or relate to" those activities. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Because Vitelco challenges the existence of personal jurisdiction, RTFC bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

Virginia's long-arm statute is a "single act" statute, which means that even a single act of business can confer jurisdiction provided that it is "significant" and demonstrates "purposeful activity" in Virginia. *Prod. Group Intern., Inc. v. Goldman*, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004)(Ellis, J.)(citations omitted). The court explained:

> It is clear that merely entering into a contract with a resident party will not subject a nonresident defendant to personal jurisdiction in the resident's forum unless some substantial part of contractual formation or performance occurs in Virginia. It is equally clear, however, that actual physical presence in [Virginia] by the defendant is not required.

*Id.* (citations omitted).

Determining whether a nonresident defendant's business activity meets the "significance" standard requires an examination of the nature and quality of all of a defendant's business contacts with Virginia that underlie the cause of

---

furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

action, and, in many instances, no single factor or aspect is
dispositive.  *Id.* at 793-94 (citations omitted).

   Vitelco argues that it does not have the requisite
minimum contacts because its only contact is that it directs
payments on RTFC loans to RTFC in Virginia.  Vitelco also argues
that the "fair play" factors weigh heavily against the assertion
of jurisdiction because it is a burden on Vitelco to litigate the
case in Virginia; Virginia has little interest in the dispute
while the Virgin Islands has a great interest; RTFC's interest in
a convenient and effective forum is not compelling, particularly
because litigation is currently underway in the Virgin Islands;
judicial efficiency dictates that the Virgin Islands is the
proper forum; and the Virgin Islands have policy interests at
stake because the outcome may result in a change of ownership for
the local telephone service provider.  Vitelco's arguments lack
merit.

   First, Vitelco actually has multiple contacts with
Virginia and the "minimum contacts" requirement is easily met.
Vitelco voluntarily became a member of RTFC, a corporation with
its principle place of business in Virginia, eighteen years ago.
Since that time, Vitelco has borrowed over $65 million from RTFC.
These loans were negotiated and administered in Virginia;
Vitelco's officers and directors frequently met with RTFC in
Virginia; payments on the loans were sent to Virginia; some of

-11-

the loans provided that they were governed by Virginia law; and
in some loan agreements, Vitelco agreed to submit to the
jurisdiction of Virginia courts.  The loan that is the subject of
this dispute was also administered in Virginia, and payments on
it were sent to Virginia.

Vitelco's entrance into a contract with RTFC in
Virginia and continuing relationship with RTFC over eighteen
years during which Vitelco sent payments to Virginia on loans for
over $65 million are contacts with Virginia.  *See Metzger*, 901
F.2d at 39-40)(entrance into contract in forum and continuing
relationship for two years with plaintiff in forum are
intentional contacts with the forum); *see also African Dev. Co.,
Ltd. v. Keene Eng'g, Inc.*, 963 F. Supp. 522, 526 (E.D. Va. 1997)
(relationship that continued for a year with plaintiff purchasing
from defendant on at least three occasions is evidence of
defendant's intent to actively pursue business with a plaintiff
in the forum); *Cambata Aviation, Inc. v. Kansas City Aviation
Ctr.*, 2001 WL 1274426 at *3 (W.D. Va. Oct. 22, 2001)(contract
involving millions of dollars demonstrates that a defendant had a
substantial connection with the forum; requiring the defendant to
defend the action in the forum would not offend traditional
notions of fair play and substantial justice).

Vitelco could have, but chose not to, negotiate to
include a forum selection clause in the Agreement choosing a
forum other than Virginia.  In fact, other loan agreements

between the parties contained a forum selection clause which chose Virginia as the forum.  These other agreements are evidence of another Vitelco contact with Virginia.  *See Cambata*, 2001 WL 1274426 at *3 (failure of defendant to include forum selection clause a factor to consider in personal jurisdiction analysis).

In addition, the exercise of jurisdiction over Vitelco does comport with traditional notions of fair play and substantial justice.  The Supreme Court has explained:

> Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.  Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.  For example . . . a defendant claiming substantial inconvenience may seek a change of venue.

*Burger King*, 471 U.S. at 477.

Virginia has an interest in adjudicating the dispute arising from an alleged breach of contract where the contract was for a $5 million line of credit issued by a company residing in Virginia.[5]  *See Burger King*, 471 U.S. at 473 (state has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors).  RTFC has an interest obtaining convenient and effective relief in the state in which it resides.  Finally, judicial economy would

_____

[5] Vitelco's argument that Virginia has no interest because RTFC is a District of Columbia resident lacks merit.  A corporation is a citizen for diversity purposes in both the state in which it is incorporated and the state where its principle place of business is located.  28 U.S.C. § 1332(c)(1) (2005).

likely be less well served in any forum other than this one which uses the "Rocket Docket."  Although Vitelco may be burdened by having to defend the suit in Virginia, this issue is better addressed through its motion to transfer venue.

Vitelco has clearly "purposefully directed" its activities at residents of Virginia, and the litigation results from alleged injures that "arise out of or relate to" those activities.  Thus, the exercise of personal jurisdiction over Vitelco by Virginia is proper and the Court will deny Vitelco's motion to dismiss for lack of jurisdiction.

## B. Transfer of venue

### 1. Other pending cases

Vitelco seeks to have the case transferred to the District Court for the District of the Virgin Islands for consolidation with the pending cases filed by RTFC in which Vitelco is a named party.  While Vitelco argues that most of the transfer factors favor transfer, the gravamen of its argument is that "[a] driving factor in the transfer analysis is the pendency of a related action in the proposed transferee forum that is part and parcel of the action for which a transfer is sought." (Def.'s Opp'n at 16).

In general, the pendency of a related action in the transferee forum favors transfer where it would be both feasible and beneficial to consolidate the actions.  *Bd. of Trs., Sheet*

*Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1261 (E.D. Va. 1988)(Ellis, J.). However, this general rule does not apply where consolidation is unlikely, the causes of action and the parties are not precisely the same, and there is no risk of inconsistent results on the central common issue. *Id.* Nevertheless, the parties need not be entirely identical for transfer. *See Hunter Eng'g Co. v. ACCU Indus., Inc.*, 245 F. Supp. 2d 761, 776 (E.D. Va.,2002). A case should be transferred "to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues." *General Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir. 1967).

Vitelco alleges that the instant suit is just one part of litigation already underway in the Virgin Islands. The Virgin Islands suit alleges that ICC and Vitelco officers and directors violated their fiduciary duties to shareholders by authorizing the two actions that are the principal bases for RTFC's allegations of default in the suits against ICC and Prosser. It is clear that Vitelco is very involved in the ICC and Prosser actions. Vitelco is an ICC subsidiary, and in those cases, RTFC seeks to foreclose on the collateral of the ICC loan which includes 100% of Vitelco common stock. Nevertheless, this alone is insufficient to merit transfer.

Vitelco argues that its defenses to the instant claim are based on the same facts as its defenses in the other cases. Vitelco asserted a "bad faith" counterclaim against RTFC in the Virgin Islands suit and intends to assert a "bad faith" affirmative defense in this action.  Vitelco argues that the issue of RTFC's bad faith should be tried in a single consolidated case.  RTFC argues that the claims and defenses in the other suits are unrelated to Vitelco's obligation on the line of credit.

As a threshold matter, the Court notes it does not appear that a "bad faith" defense would apply in this case. Material breach of contract occurs when a party fails to do something which it is bound to do according to the contract.  *Pa. Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190, 1195 (E.D. Va. 1987)(citing *R.G. Pope Constr. Co. v. Guard Rail of Roanoke, Inc.*, 219 Va. 111, 244 S.E.2d 774 (Va. 978)).  Under Virginia law, every contract contains an implied covenant of good faith and fair dealing in the performance of the agreement.  *Id.* (citations omitted).  Yet, one Virginia court has held that under the Uniform Commercial Code as adopted in Virginia, a good faith term cannot be implied to negate or materially alter express terms in a contract.  *See NationsBank of Va. v. Mahoney*, 1993 WL 946352 at *4 (Va. Cir. Ct. Dec. 6, 1993).  And under Maryland

law, the implied covenant of good faith and fair dealing in
contracts:

> *is limited to* prohibiting one party from acting in such
> a manner as to prevent the other party from performing
> his obligations under the contract.  The covenant does
> not extend to imply a general duty of good faith and
> fair dealing in the performance of obligations under
> the contract that do not implicate or impair another
> party's performance under the contract.

*Edell & Assocs. v. Law Offices of Peter G. Angelos*, 264 F.3d 424,
444 (4th Cir. 2001).

Although there is no Virginia law on this issue, the
Court presumes that the Virginia Supreme Court would similarly
conclude that the implied covenant of good faith and fair dealing
would not require RTFC to allow Vitelco to setoff if the setoff
waiver is valid.  The Agreement required Vitelco to repay the
loan on the Maturity Date and Vitelco allegedly failed to do so.
Assuming without deciding that the waiver of the set-off was
valid and Vitelco did not make payment on the loan as required by
the Agreement, the Virginia Supreme Court would likely find that
Vitelco breached the Agreement and that a bad faith defense is
not viable.

Moreover, the instant case is factually distinguished
from the cases pending in the Virgin Islands.  The parties are
the same, but the issues are different.  The three suits in the
Virgin Islands revolve around Vitelco's issuance of $81 million
in preferred stock and Vitelco's use of $30 million to finance
ICC's acquisition of the Belize Telecommunications Ltd.  The

-17-

instant suit is based on the alleged breach of an unrelated line
of credit Agreement by Vitelco.  There are no central common
issues between the instant case and the other three suits.
Vitelco raises broad, general allegations of bad faith in the
instant case, but the central issue is still whether Vitelco
breached the Agreement.  Moreover, it does not appear that bad
faith is a viable defense.  And even if the Court were to find
that Vitelco breached the instant Agreement, it would not produce
an inconsistent result if the Virgin Islands court were to
conclude that RTFC acted in bad faith with regard to the three
suits pending there.  Finally, because the issues are different,
judicial resources would not be wasted by having two different
courts adjudicate the cases.  The three other suits are not
sufficiently related to favor transfer of the instant suit to the
Virgin Islands.

### 2. Other transfer factors

The other transfer factors show that the case should
not be transferred.  In applying the factors, the plaintiff's
choice of forum is entitled to substantial weight, and should be
abandoned only if the defendant can show that it is clearly
outweighed by other factors.  *GTE Wireless, Inc.*, 71 F. Supp. 2d
at 519.

The other factors are: (1) the plaintiffs' choice of
venue; (2) witness convenience and access; (3) the convenience of

the parties; and (4) the interest of justice. *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256-62 (E.D. Va. 1988)(Ellis, J.).  The interest of justice factors include the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, [and] the possibility of harassment.  *Id.*

There are witnesses in both Virginia and the Virgin Islands, so witness convenience and access appears to be a neutral factor.  Vitelco submitted as a list of potential witnesses, the list of forty-six witnesses from the ICC and Prosser actions claiming that they "have knowledge of the facts underlying the affirmative defenses asserted by Vitelco in this action."  (Reilly Aff. ¶ 3).  Twenty-three of the witnesses are located in the Virgin Islands.  (*Id.* at Ex. A).  However, the Court finds it difficult to believe that all the witnesses in the ICC and Prosser actions will have information relevant to the instant breach of contract suit.  Three of the Virgin Islands witnesses are Vitelco employees who Vitelco can transport to Virginia.  *See* 15 Wright, Miller & Cooper, Federal Practice and Procedure 2d § 3851 (2005)(transfer may be denied when witnesses are employees of a party and their presence can be obtained by that party).  Many of the other Virgin Islands witnesses appear

-19-

to offer only duplicitous information, and thus will be given less weight by the Court when considering the convenience of witnesses.  For example, there are ten witnesses in the Virgin Islands who are members, officers, or directors of the Commission who allegedly will testify about RTFC bad faith.  There are two current outside counsel of the Commission who will also allegedly testify about RTFC.  And there are three former members of the Commission who were members in 1989 when RTFC entered into a settlement agreement, the relevancy of which to this case is unknown.

The convenience of the parties is also neutral as Virginia is more convenient for RTFC and the Virgin Islands is more convenient for Vitelco.

As for the interests of justice, this Court is more familiar with Virginia law, though Virginia contact law is not particularly complex.  RTFC explained during oral argument that the instant case will move forward more quickly than the cases pending in the Virgin Islands.  Vitelco argues that "the abusive tactics RTFC has already employed in its litigation with ICC, Prosser, and Vitelco – particularly its resort to multiple lawsuits and multiple forums – reveal its strategy of harassment."  (Def.'s Mot. at 18).  Vitelco suggests that by filing another lawsuit in the instant case rather than exercising its right to set-off against Vitelco's patronage capital, RTFC

-20-

showed its bad faith.  However, as explained above, bad faith does not appear to be a viable defense nor is it an important issue in the instant breach of contract case.

RTFC's choice of forum is entitled to substantial weight and Vitelco cannot show that the choice is clearly outweighed here.  Accordingly, the Court will deny Vitelco's motion to transfer venue.

## IV. Conclusion

For the reasons stated above, the Court will deny Defendant's motion to dismiss and deny Defendant's motion to transfer venue.  An appropriate Order will issue.


June_1, 2005                    _____/s/_____
Alexandria, Virginia           UNITED STATES DISTRICT COURT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

---

RURAL TELEPHONE FINANCE          )
COOPERATIVE,                     )
                                 )
        Plaintiff,               )
                                 )
        v.                       )    1:05cv320 (JCC)
                                 )
THE VIRGIN ISLANDS TELEPHONE     )
CORPORATION,                     )
                                 )
        Defendant.               )

**O R D E R**

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Defendant's Motion to Dismiss is DENIED;

(2) Defendant's Motion to Transfer is DENIED;

(3) Defendant shall file an Answer within 10 days of entry of this Order; and

(4) the Clerk of the Court shall forward copies of this Order and the accompanying Memorandum Opinion to all counsel of record.

June 1, 2005                    _____/s/_____
Alexandria, Virginia           UNITED STATES DISTRICT COURT JUDGE